IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| J.D. COLEMAN #823371 | § | |
| | § | |
| V. | § | A-06-CA-039-SS |
| | § | |
| GILBERT CAMPUZANO, | § | |
| VERNON K. PITTMAN, JAMES | § | |
| ROBINSON, JOHN FLORES, | § | |
| WILLIAM SANSON, | § | |
| NATHAN WILCOX, ESTEPHENO | § | |
| MORENO, and J. PERALTA | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Defendants' Motion for Summary Judgment (Document No. 26); Plaintiff's Motion for Summary Judgment (Document No. 28); and Defendants' Objections and Response thereto (Document No. 30). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## I.  BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Travis State Jail. Plaintiff files this action pursuant to 42 U.S.C. § 1983 alleging he was electrocuted at the Travis State Jail while working in the kitchen.  According to Plaintiff, on or about September 15, 2005, he was electrocuted by a faulty food warmer.  Plaintiff asserts many complaints had been made about the food warmer, and it was inspected by Fire and Safety Inspector Nathan Wilcox and Maintenance Supervisor William Sanson on September 14, 2005.  After the inspection, they allegedly declared nothing was wrong with the equipment and that the food warmer could be used.  The next day, Plaintiff was electrocuted.  Plaintiff contends Food Service Manager Captain John Flores and Sergeant Estepheno Moreno should have removed the food warmer when offenders reported it was shocking people.  Plaintiff faults Regional Director Campuzano for not providing a safe work environment.

Plaintiff also contends that after he was injured he should have been transferred by Warden Pittman to a medical facility.   Instead, Plaintiff asserts he was treated by Dr. Robinson, after Dr. Robinson consulted with another doctor in Galveston.  Plaintiff complains he was returned to general population with a sling and ibuprofen and was not housed in the infirmary even though he was in pain. Plaintiff also complains his return to general population was dangerous, because he could only protect himself with one arm.  Plaintiff claims Assistant Warden Peralta failed to adequately investigate his Step 1 grievance.  Plaintiff sues Regional Director Gilbert Campuzano, Warden Vernon K. Pittman, Assistant Warden J. Peralta, Dr. James Robinson, John Flores, William Sanson, Nathan Wilcox, and Estepheno Moreno.  He seeks compensatory damages for negligence, deliberate indifference, inadequate medical treatment, and pain and suffering.

Defendants move for summary judgment arguing they are protected from Plaintiff's claims against them in their individual capacities by the doctrine of qualified immunity. Defendants Campuzano, Wilcox, Pittman and Peralta argue Plaintiff is attempting to hold them responsible in their supervisory capacities. Defendants also argue Plaintiff has not shown they were deliberately indifferent to his safety. With regard to Plaintiff's medical claims, Defendants rely on Plaintiff's medical records and argue there has been no deliberate indifference.

Plaintiff responds by filing his own Motion for Summary Judgment. Plaintiff argues Defendants Campuzano, Pittman, Peralta, Flores Moreno, Sanson and Wilcox were negligent and acted with deliberate indifference, causing Plaintiff physical bodily injury. Plaintiff holds Defendants responsible for not providing a safe work environment. Plaintiff states Defendants had plenty of time to fix the food warmer before he was shocked. Plaintiff asserts Defendants Wilcox and Sanson failed to properly inspect the food warmer in a correct and professional manner, resulting in Plaintiff's injury. Plaintiff attempts to hold Defendants liable on a premises liability theory. Plaintiff concludes Defendants Campuzano, Pittman, Peralta, Wilcox, Sanson, Flores, and Moreno had knowledge that the food warmer was at risk and they did not respond to it in a reasonable and professional manner.

Plaintiff further argues Defendant Robinson failed to respond appropriately to his serious medical needs. Plaintiff repeats his claim that his arm was placed in a sling, he was given pain medication and he was returned to general population.

## II. ANALYSIS

A.  <u>Standard of Review Under Fed. R. Civ. P. 56(c)</u>

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

3

as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322, 106 S. Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24, 106 S. Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed. R. Civ. P. 56(e); Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)).

To the extent facts are undisputed, a Court may resolve the case as a matter of law. <u>Blackwell v. Barton</u>, 34 F.3d 298, 301 (5th Cir. 1994).

      B.     <u>Eleventh Amendment Immunity</u>

Although not addressed by the defendants, Plaintiff's claims against them in their official capacities are barred by Eleventh Amendment Immunity.[1] Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. <u>Pennhurst State School Hosp. v. Halderman</u>, 465 U.S. 89, 104 S. Ct. 900 (1984). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. <u>Port Auth. Trans-Hudson v. Feeney</u>, 495 U.S. 299, 304, 110 S. Ct. 1868, 1871 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. <u>Green v. State Bar of Texas</u>, 27 F.3d 1083, 1087 (1994).

      C.     <u>Qualified Immunity</u>

Defendants are also protected by the doctrine of qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability. <u>Jackson v. City of Beaumont</u>, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." <u>Brady v. Fort Bend County</u>, 58 F.3d

---

[1] Plaintiff does not specify whether he is suing the defendants in their official or individual capacities. As such, the Court assumes Plaintiff is suing the defendants in both capacities.

173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id. With respect to a ruling on qualified immunity, the first question a court should address is "whether the plaintiff has alleged a violation of a clearly established constitutional right." Siegert v. Gilley, 500 U.S. 226, 231, 111 S. Ct. 1789 (1991); Hale v. Townley, 45 F.3d 914, 917 (5th Cir. 1995). If the Plaintiff has alleged a constitutional violation, the court must then determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions. Hale, 45 F.3d at 917, citing Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S. Ct. 1081 (1994); Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1993).

Claims of qualified immunity require a two step analysis. As a threshold matter, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). If the allegations do not establish the violation of a constitutional right, the official is entitled to qualified immunity. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. If the allegations could make out a constitutional violation, the court must ask whether the right was clearly established – that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S. Ct. at 2156. If an official makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. Id. at 205, 121 S. Ct. at 2158.

D.   Safe Work Environment

Plaintiff contends Defendants were negligent and deliberately indifferent to his needs by failing to provide a safe work environment. "[A] prison official cannot be held liable under the Eighth

6

Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S. Ct. 1970, 1979 (1994); see Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

A plaintiff may maintain a civil rights suit only if he can show an abuse of government power that rises to a constitutional level. Love v. King, 784 F.2d 708, 712 (5th Cir. 1986); Williams v. Kelley, 624 F.2d 695, 697 (5th Cir. 1980), cert. denied, 451 U.S. 1019, 101 S. Ct. 3009 (1981). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. Baker v. McCollan, 443 U.S. 137, 146, 99 S. Ct. 2689, 2695-96 (1979). See also, Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). It is well settled that negligence on the part of jail officials does not give rise to civil rights claims. Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662 (1986); Marsh v. Jones, 53 F.3d 707, 712 (5th Cir. 1995); Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir. 1988). Complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act even if such complaints could be valid under state law. See Bowie v. Procunier, 808 F.2d 1142 (5th Cir. 1987) (inmate lost an eye as a result of failure to provide safety equipment; held not to be a constitutional violation).

Plaintiff's complaint is in effect one of negligence; he argues that the prison officials showed a lack of due care in examining the faulty food warmer and in failing to remove the food warmer until

7

it could be repaired. His allegations fail to show that the prison officials were deliberately indifferent to his safety, rather than being merely negligent or careless. As the Fifth Circuit has observed, deliberate indifference is "an extremely high standard to meet." See Domino v. TDCJ-ID, 239 F.3d 752, 756 (5th Cir. 2001). While the Court does not in any way minimize the severity of Plaintiff's injury, it is by no means unusual for negligent acts to result in serious injury, as seen in Bowie and many other cases. Regardless of the seriousness of the injury, however, the Supreme Court and the Fifth Circuit have made clear that negligence does not set out a basis for a constitutional claim under 42 U.S.C. § 1983.

### E. Medical Care

Plaintiff contends he received inadequate medical care after he was injured. The Fifth Circuit has held that a state official's episodic act or omission violates an inmate's due process right to medical care if the official acts with subjective deliberate indifference to the inmate's rights. Hare v. City of Corinth, 74 F.3d 633, 647-48 (5th Cir. 1996) (en banc). The court then defined subjective deliberate indifference as subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference. Id. at 650.

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs. Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976). Claims of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim of inadequate medical care. Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991). Similarly, unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not give rise to a cause of action. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). A claim

that additional diagnostic techniques or forms of treatment should have been utilized is also inadequate for purposes of § 1983. Estelle, 429 U.S. at 107, 97 S. Ct. at 293. In short, a claim of medical malpractice does not amount to a constitutional violation merely because the plaintiff is a prisoner. Id. at 106, 97 S. Ct. at 292. Deliberate indifference may also be shown by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Id. at 104-05, 97 S. Ct. at 291. In order to maintain a claim for delayed medical treatment there must have been deliberate indifference which results in harm. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993); see also McClung v. Camp County Texas, 627 F. Supp. 528, 532 (E.D. Tex. 1986) (concluding diabetic who only received three of his required four shots a day did not state a constitutional claim because he suffered no actual harm). "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscious of mankind." McCormick v. Stadler, 105 F.3d 1059, 1061 (5th Cir. 1997).

The summary judgment evidence reflects Plaintiff was immediately taken to the medical unit for treatment after he suffered his injury. See Defendants' Exhibit A at 8. A phone consultation was made with Dr. Moore. Id. Plaintiff was examined, x-rays were ordered, and Plaintiff's arm was placed in a sling. Id. Plaintiff was re-examined the following day on September 16, 2005. Id. at 6. On September 20, 2005, and September 30, 2005, Plaintiff returned to the medical unit for follow-up appointments. Id. at 5, 14. Plaintiff was prescribed 600 mg of Motrin for pain. Id. at 14. Plaintiff returned for additional follow-up appointments on October 5, 2005 and October 19, 2005, where he was examined and he reported he still has pain but not as bad. Id. at 4, 13. On November 2, 2005, Plaintiff returned for an additional follow-up appointment. Id. at 3. Six days later, on November 8, 2005, Plaintiff was re-examined. Id. at 12. Dr. Robinson determined Plaintiff had about 80% range

of motion in his shoulder. Id. On January 22, 2006, Dr. Robinson examined Plaintiff and determined Plaintiff is improving in every way. Id. at 11. On February 1, 2006, Plaintiff was seen in the medical unit and reported no pain in his arm. Id. at 10. He further reported he has good movement unless lifting something heavy. Id.

After consideration of the uncontroverted summary judgment evidence, it appears Plaintiff simply disagrees with the course of treatment taken by Dr. Robinson. However, as explained above, unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not give rise to a cause of action. Plaintiff has failed to adduce any competent evidence indicating he received inappropriate treatment for his injuries. As such, Plaintiff has failed to allege a valid constitutional violation with respect to his medical treatment.

F.      Grievance System

Plaintiff alleges Assistant Warden Peralta failed to adequately investigate his Step 1 grievance. "[A] prisoner has a liberty interest only in 'freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Plaintiff does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, Plaintiff has failed to allege a valid constitutional violation with regard to the investigation of his grievance.

G.        <u>Supplemental Jurisdiction</u>

Plaintiff's negligence claim is a state law claim. Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action which it has original jurisdiction that they form part of the same case or controversy. However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Because the dismissal of Plaintiff's federal claims is recommended, the District Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim of negligence.

### III. RECOMMENDATION

The undersigned recommends that the District Court deny Plaintiff's Motion for Summary Judgment [#28], grant Defendants' Motion for Summary Judgment [#26], dismiss as moot Defendants' Objection to Plaintiff's Motion for Summary Judgment [#30], dismiss without prejudice for want of jurisdiction Plaintiff's federal law claims brought against the defendants in their official capacities, dismiss with prejudice Plaintiff's federal law claims brought against the defendants in their individual capacities and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. <u>Battles v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall

bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

The Clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 16th day of June, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE